IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge John L. Kane

Civil Action **No. 1:10-cv-00701-JLK**

**KATHERINE FRANCIS**,
    Plaintiff
v.

**MEAD JOHNSON & COMPANY**,
    Defendant.

---

ORDER ON MOTION TO DISMISS

---

Kane, J.

   Defendant is a global manufacturer of infant formula products.[1]  In an attempt to distinguish itself from its competitors, Defendant has developed a proprietary blend of hormones, LIPIL, purported to promote brain and eye development in infants.  These hormones, docosahexaenoic acid ("DHA") and arachidonic acid ("ARA"), are not exclusive to Defendant's product, but LIPIL is a registered trademark.  Faced with increasing competition from lower-priced brands, Defendant has

---

[1]  For purposes of considering a motion to dismiss, "[a]ll well-pleaded facts, as distinguished from conclusory allegations, must be taken as true."  *Ruiz v. McDonnell*, 299 F.3d 1173, 1181 (10th Cir. 2002) (quoting *Swanson v. Bixler*, 750 F.2d 810, 813 (10th Cir. 1984)).  Accordingly, all facts in this opinion are drawn exclusively from Plaintiff's First Amended Complaint (doc.  14).

attempted to distinguish its product by focusing on the presence of LIPIL in its formulas on both its product labeling and in its internet and print marketing materials.

Based in large part on Defendant's product labeling touting the benefits of LIPIL and its unavailability in other brands, Plaintiff regularly purchased Defendant's product for her infant between November 2007 and August 2009. Plaintiff purchased Defendant's product from various stores in the State of Colorado including, but not limited to: City Market in Aspen, Basalt, and Glenwood Springs, Target in Glenwood Springs; Walmart in Glenwood Springs; and Clark's Market in Aspen and Basalt. Plaintiff specifically cites as influential the claims contained on Defendant's product label that: "LIPIL® is a blend of DHA and ARA, important nutrients also found in breast milk that promote brain and eye development," "Enfamil® LIPIL® is the only infant formula shown in independent clinical studies to improve baby's brain and eye development," and "[t]his scientifically-developed formula is not available in a store brand." *See* Plaintiff's Exhibit A (doc. 14-1).

Plaintiff alleges that these statements led her to believe that Defendant's product was the only one containing DHA and ARA, and as a result she was "misled into purchasing the Product and paying substantially more than she would have paid for what were comparable products available from other companies, thereby resulting in her suffering injury in fact and a loss of money or property resulting from Mead Johnson's conduct." First Amended Complaint (doc. 14) at 13. She further argues that, absent this deception, she would have purchased a less expensive brand containing the same hormones.

In light of these alleged deceptions, Plaintiff filed the instant action on behalf of herself and a class of persons comprised of all consumers who purchased Defendant's product for personal,

family, or household purposes in Colorado during the past four years.  She seeks legal and equitable relief under the Colorado Consumer Protection Act ("CCPA"), breach of warranty, and unjust enrichment.  She filed her first complaint on March 26, 2010, but after Defendant filed a motion to dismiss, she filed an amended complaint on June 22, 2010.  On July 9, 2010, Defendant filed a motion seeking to dismiss the amended complaint for failure to state a claim upon which relief can be granted (doc. 15).[2]  Having fully considered the parties' arguments, Defendant's Motion to Dismiss is GRANTED in part and DENIED in part.

## JURISDICTION AND VENUE

Plaintiff, a citizen of Colorado, alleges a class action lawsuit against Defendant, a citizen of Indiana and Delaware, with damages in excess of $ 5,000,000, exclusive of interest and costs.  Accordingly, I have jurisdiction over this matter pursuant to 28 U.S.C. § 1332(d)(2).  Furthermore, because a significant part of the events giving rise to Plaintiff's claims occurred in this District, and Defendant is subject to personal jurisdiction in this District, venue is proper pursuant to 28 U.S.C. § 1391.

## LEGAL STANDARDS

Defendant's Motion to Dismiss invokes two similar, yet slightly different, pleading standards.  I begin by discussing the general standards of Rule 8(a) before turning to the heightened standards of Rule 9(b) which apply to Plaintiff's CCPA and unjust enrichment claims.

---

[2] Defendant also filed a motion to strike the class allegations from Plaintiff's amended complaint (doc. 18).  On September 16, 2010, I dismissed that motion as premature.

**Fed. R. Civ. P. 8(a)**

Under Fed. R. Civ. P. 8(a)(2), a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief," in order to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). A complaint should not be dismissed for failure to state a claim "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley*, 355 U.S. at 45-46.

As the Supreme Court recently clarified, however, "*Conley* . . . described the breadth of opportunity to prove what an adequate complaint claims, not the minimum standard of adequate pleading to govern a complaint's survival." *Twombly*, 550 U.S. at 563 (emphasis added). Accordingly, as the Court explained in *Twombly* and reiterated in *Ashcroft v. Iqbal*, 129 S.Ct. 1937 (2009), "to survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 129 S. Ct. at 1949 (quoting *Twombly*, 550 U.S. at 570); see also *United States ex rel. Lemmon v. Envirocare of Utah, Inc.*, 614 F.3d 1163, 1167 (10th Cir. 2010).

Plausibility does not require detailed factual allegations, but it does require that a complaint contain sufficiently specific factual assertions "to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555; *see also Iqbal*, 129 S. Ct. at 1950 (Holding that in weighing a motion to dismiss, courts should not consider "[t]hreadbare recitals of elements of a cause of action, supported by mere conclusory statements . . . ."). As the Tenth Circuit explains, "'plausibility' in this context must refer to the scope of the allegations in a complaint: if they are so general that they encompass a wide swath of conduct, much of it innocent, then the plaintiffs 'have not nudged their claims across

4

the line from conceivable to plausible.'" *Robbins v. Okla. ex rel. Dep't of Human Servs.*, 519 F.3d 1242, 1247 (10th Cir. 2008).  Thus, in this context, plausibility does not equate to probability.

### Fed. R. Civ. P. 9(b)

Plaintiff's CCPA and unjust enrichment claims are also subject to the heightened pleading standards of Rule 9(b), which requires Plaintiff to "state with particularity the circumstances constituting [the complained of] fraud."[3] Fed. R. Civ. P. 9(b); *Duran v. Clover Club Foods Co.*, 616 F. Supp. 790, 793 (D. Colo. 1985) ("allegations . . . under the [Colorado Consumer Protection] Act are subject to Rule 9(b)'s requirement of particularity").

In the wake of the *Twombly* and *Iqbal* decisions, the Rule 9(b) pleading standards remain largely unchanged.  Although these decisions clarified Rule 9(b)'s requirements, Rule 9(b)'s "purpose remains unaltered." *Lemmon*, 614 F.3d at 1172.  Accordingly, under Rule 9(b), Plaintiff must specifically plead the "who, what, when, where and how" of her CCPA claims. *United States ex rel. Sikkenga v. Regence Bluecross Blueshield of Utah*, 472 F.3d 702, 727 (10th Cir. 2006) (quoting *Thompson v. Columbia/HCA Healthcare Corp.*, 125 F.3d 899, 902 (5th Cir. 1998)); *see Lemmon*, 614 F.3d at 1172. In other words, Plaintiff's complaint must "set forth the time, place and contents of the false representation, the identity of the party making the false statements[,] and the consequences thereof." *Schwartz v. Celestial Seasonings, Inc.*, 124 F.3d 1246, 1252 (10th Cir.1991) (quoting *Lawrence Nat'l Bank v. Edmonds*, 924 F.3d 176, 180 (10th Cir. 1997).

With these standards in mind, I turn to Plaintiff's claims.

---

[3]  Because Rule 9(b) only applies to claims of fraud, it does not apply to Plaintiff's breach of warranty claims.

## ANALYSIS/DISCUSSION

### CCPA Claims

Plaintiff asserts a variety of CCPA claims related to statements on and omissions from Defendant's product label.  The CCPA is a remedial statute "enacted to regulate commercial activities and practices which, 'because of their nature, may prove injurious, offensive, or dangerous to the public.'" *Rhino Linings United States v. Rocky Mt. Rhino Lining*, 62 P.3d 142, 146 (Colo. 2003) (quoting *People ex rel. Dunbar v. Gym of Am., Inc.*, 493 P.2d 660, 667 (Colo. 1972)).  To plead an actionable claim under the CCPA, Plaintiff must show that: (1) Defendant engaged in an unfair or deceptive trade practice during the course of its business, vocation, or occupation; (2) this practice significantly impacted the public as actual or potential consumers of Defendant's goods, services, or property; (3) Plaintiff suffered injury in fact to a legally protected interest; and (4) the challenged practice caused Plaintiff's injury. *Rhino Linings*, 62 P.3d at 146-47; *see also Hall v. Walter*, 969 P.2d 224, 234-35 (Colo. 1998).  I address only those elements contested by Defendant in its Motion to Dismiss, namely whether Plaintiff has adequately pled an unfair or deceptive trade practice and a significant public impact.

### *Unfair or Deceptive Trade Practice*

Plaintiff alleges that Defendant has engaged in three types of unfair or deceptive trade practices prohibited by the CCPA:  (1) knowingly making a false representation in violation of Colo. Rev. Stat. § 6-1-105(1)(e);  (2) disparaging the goods of another by false or misleading representations of fact in violation of Colo. Rev. Stat. § 6-1-105(1)(h); and (3) failing to disclose

6

material information concerning its product in violation of Colo. Rev. Stat. § 6-1-105(1)(u).[4] Because Plaintiff's claims of false representation and disparagement both involve the same affirmative conduct by Defendant, I combine my discussion of those claims before turning separately to Plaintiff's failure to disclose claim.

### False Representation/Disparagement

Plaintiff's claims of false representation and disparagement hinge upon the content of Defendant's product labeling and advertisements.  Specifically, Plaintiff cites as deceptive the following statements on Defendant's product label:[5]

> 1. "Enfamil® LIPIL® is the only infant formula shown in independent clinical studies to <u>improve</u> baby's brain and eye development.*" (emphasis in original). In smaller print, the label states, "*vs same routine formula without DHA & ARA. Measured at 12 and 18 months."

> 2. "This scientifically-developed formula is not available in a store brand."

Exhibit A to First Amended Complaint (doc. 14-1).  Defendant argues that these statements are neither false nor misleading.  Based on a careful, literal reading of the contested statements, I agree with Defendant – to an extent.  Taken at face value these statements are not false. Falsity is not, however, a prerequisite for either false representation or disparagement claims under the CCPA.

---

[4] Defendant argues that each of Plaintiff's CCPA claims requires an element of misrepresentation.  This argument confounds the requirements for an actionable CCPA claim. Only the first two claims require an affirmative action on the part of the Defendant.  The third claim, however, requires only an intent to deceive, not any affirmative action.

[5] Plaintiff's First Amended Complaint contains references to other allegedly false statements.  Pursuant to Rule 9(b), however, she may only rely upon those statements for which she has adequately pled the "who, what, when, where, how, and why."  *United States ex rel. Sikkenga*, 472 F.3d at 727.  Plaintiff has met this standard for the statements made on Defendant's product label, but fails to plead adequately these elements for the other allegedly false statements cited in her First Amended Complaint.  My analysis is limited accordingly.

The language of the CCPA clearly includes misleading representations of fact as actionable disparagement.  Colo. Rev. Stat. 6-1-105(1)(h).  And, the Colorado Supreme Court has broadly construed the statutory language of the CCPA's false representation provision, finding that "[a] plaintiff may satisfy the deceptive trade practices requirement of [false representation] by establishing either a misrepresentation or that the false representation had the capacity or tendency to deceive, even if it did not." *Rhino Linings*, 62 P.3d at 148.  "Misrepresentation" is in turn defined as "a false or misleading statement that induces the recipient to act or refrain from acting." *Id.* at 147.  Plaintiff need only allege that the statements contained on Defendant's product label are misleading to establish an "unfair or deceptive trade practice" under the "false representation" and "disparagement" sections of the CCPA.

In her First Amended Complaint, Plaintiff plainly alleges that these statements were deceptive.  Plaintiff argues that the determination of whether a certain act is deceptive or misleading for the purposes of her CCPA claims is a question of fact for the fact-finder, and inappropriate for resolution at this stage of the proceedings.  Despite the lack of any Colorado cases addressing this issue and notwithstanding Defendant's argument to the contrary, I find Plaintiff's argument persuasive.  Plaintiff has adequately pled statements which a reasonable finder of fact could find misleading or deceptive.[6]  *See Guidance Endodontics, LLC v. Dentsply Int'l , Inc.*, 2010 U.S. Dist. LEXIS 71305, at *59 (D.N.M. July 1, 2010) (collecting and summarizing cases from a variety of

---

[6] Plaintiff also tersely argues that Defendant "is collaterally estopped from re-litigating whether or not these statements are misleading in this action" because these claims were found misleading in an earlier case pertaining to a Lanham Act action brought against Mead Johnson by a competitor.  I need not decide whether collateral estoppel applies in this case, and it would be premature to do so absent meaningful argument on this issue by the parties.

jurisdictions). These statements form a plausible basis for Plaintiff's CCPA claim; it may not be dismissed under Rule 12(b)(6).

Nonetheless, Defendant argues that even if these statements were misleading, they cannot form the basis for a valid CCPA claim because they "are no different than terms like 'better' and 'one of a kind' which have been held to be non-actionable puffery." Motion to Dismiss (doc. 16) at 14. Although Defendant's premise is correct, *see Park Rise Homeowners Ass'n, Inc. v. Res. Constr. Co.*, 155 P.3d 427, 435 (Colo. App. 2006) (holding that "the CCPA does not, as a matter of law, make actionable a statement which would otherwise be mere puffery"), this argument fails because Defendant ignores the essential distinction between puffery and a deceptive trade practice: general statements of opinion typically constitute protected puffery, while specific representations of fact may form the basis of a deceptive trade practice claim. *Id.* at 435.

This distinction is illuminated by a recent opinion issued by this court. In *Giles v. The Inflatable Store, Inc.*, the plaintiff, who was severely injured while participating in a mock sumo wrestling contest with equipment provided by the defendant, alleged a CCPA claim based on the defendant's representations that its sumo equipment was the "best built, and safest." 2009 U.S. Dist. LEXIS 28382, at *2 (D. Colo. April 6, 2009). The plaintiff alleged that these statements were false representations under the CCPA. *Id.* Considering these two statements separately, the court found the assertion that the equipment was "best built" to be inactionable puffery, but that the statement that the equipment was the "safest" could form the basis for the plaintiff's CCPA claim because it was subject to "specific measure or calibration." *Id.* at *10-13.

Like the Giles defendant's statement that its product was the "safest," the statements at issue here are subject to specific measure. These statements are exclusionary, asserting that defendant's

product is the only one containing defendant's proprietary formula and that it is the only one that has been clinically tested.  The statements are, therefore, easily quantifiable.  No subjective comparison is required; the statements can be objectively verified by an examination of the contents of defendant's competitors' formulas or a search of the relevant scientific literature.  They are not, therefore, puffery, and they may form the basis for Plaintiff's CCPA claims.

### Failure to Disclose

Plaintiff also argues that Defendant failed to disclose material information concerning its product in violation of the CCPA.  In order to maintain a "failure to disclose" claim under the CCPA, Plaintiff must adequately allege:

> (1) that Defendant failed to disclose information concerning goods, services or property to consumers; (2) that Defendant knew this information at the time of the advertisement or sale of the goods, services or property; (3) that the non-disclosed information was material; and (4) that Defendant did not disclose this information with the intent to induce the consumer to enter into a transaction.

*Warner v. Ford Motor Co.*, 2008 U.S. Dist. LEXIS 82858, at *28-29 (Sept. 30, 2008).  Plaintiff argues Defendant purposefully withheld that:

> 1) the formulation of its Product has changed 19 times since its purported ability to promote brain and eye development was clinically tested, 2) the testing in question only compared the Product to a prior formulation of Enfamil® without DHA and ARA and no other brands, and 3) the testing in question actually establishes that any infant formula product with the same levels of DHA and ARA as that in Mead Johnson's Product would be "equally effective in promoting brain and eye development in infants . . . ."

Plaintiff's First Amended Complaint (doc. 14) at 18.

As an initial matter, Defendant argues that Plaintiff's third claim cannot form the basis of a "failure to disclose" claim under the CCPA, because Defendant was under no duty to disclose

information about its competitors' products.[7]  Defendant's argument is well-taken.  There can be no

failure to disclose absent a duty to disclose.  *C.f. Barfield v. Hall Realty, Inc.*, 232 P.3d 286, 292

(Colo.  App. 2010) (applying this rule in a non-CCPA case); *Williamson v. Amrani*, 152 P.3d 60,

73 (Kan. 2007) (applying this rule in an analogous Kansas Consumer Protection Act case).

Generally, "a defendant has a duty to disclose to a plaintiff with whom he or she deals material facts

that 'in equity or good conscience' should be disclosed."  *Mallon Oil Co. v. Bowen/Edwards*

*Assocs.*, 965 P.2d 105, 111 (Colo. App. 1998) (quoting *Smith v. Boyett*, 908 P.2d 508, 512 (Colo.

1995)).[8]  I cannot find, and Plaintiff does not identify, any duty on the part of defendant to disclose

---

[7]  Neither party addresses the first, second, or fourth elements of a "failure to disclose" claim.  Accordingly, I do not address them and instead focus on the arguments raised by Defendant.

[8]  The Restatement 2d of Torts provides clearer guidance; a party to a business transaction is obligated to disclose:

> (a) matters known to him that the other is entitled to know because of a fiduciary or other similar relation of trust and confidence between them;  and

> (b) matters known to him that he knows to be necessary to prevent his partial or ambiguous statement of the facts from being misleading; and

> (c) subsequently acquired information that he knows will make untrue or misleading a previous representation that when made was true or believed to be so; and

> (d) the falsity of a representation not made with the expectation that it would be acted upon, if he subsequently learns that the other is about to act in reliance upon it in a transaction with him; and

> (e) facts basic to the transaction, if he knows that the other is about to enter into it under a mistake as to them, and that the other, because of the relationship between them, the customs of the trade or other objective circumstances, would reasonably expect a disclosure of those facts.

Restatement Second of Torts:  Liability for Nondisclosure, § 551(2).

information about its competitors' products.  Indeed, in the absence of some special circumstance, any such duty would be anathema in a competitive free-market economy.  This purported failure to disclose is, therefore, inactionable.

Defendant does not dispute whether it was under a duty to disclose the information relating to Plaintiff's first and second claims.  Instead, Defendant asserts that the fact that its product has changed nineteen times since it was clinically tested is immaterial.[9]

A fact is material if the consumer would not have purchased the product had he known the non-disclosed information.  *See* Black's Law Dictionary ___ (9th ed. 2009).   Defendant argues Plaintiff has failed to "allege that the changes [to Defendant's formula] are material to the advertising statements or would have any impact on the clinical testing of the formula."  Defendant's Motion to Dismiss (doc. 16) at 15.  This argument is inapposite.  Plaintiff need only allege that these facts, if disclosed, would have influenced <u>her</u> purchasing decision.  Reading Plaintiff's allegations in the most favorable light, she has asserted sufficient evidence to support a finding to that end, and her claim survives Defendant's Motion to Dismiss.

*Significant Public Impact*

Defendant also alleges that Plaintiff has failed to allege a significant public impact as required to maintain a CCPA claim.  Once again, although the premise of Defendant's argument is sound, *see Rhino Linings,* 62 P.3d at 147,  it fails because Plaintiff has adequately established that Defendant's behavior has "significantly impact[ed] the public as actual or potential consumers" of its goods.  *Id.*

---

[9]  Notably, Defendant fails to address Plaintiff's claim that the testing in question only compared the Product to a prior formulation of Enfamil® without DHA and ARA and no other brands.  Accordingly, I do not address this claim and it may also form a basis for Plaintiff's "failure to disclose" claims.

In determining whether Plaintiff has adequately pled a significant public impact, relevant considerations "include the number of consumers directly affected by the challenged practice, the relative sophistication and bargaining power of the consumers affected by the challenged practice, and evidence that the challenged practice has previously impacted other consumers or has the significant potential to do so in the future." *Id.* at 149 (citing *Martinez v. Lewis*, 969 P.2d 213, 222 (Colo. 1998). In most circumstances, where a defendant's misrepresentations are in the form of an advertisement directed generally to the public as potential or actual consumers, a significant public impact is presumed. *Hall*, 969 P.2d at 235.

Defendant's argument hinges on its already discredited claim that Plaintiff fails to allege any misrepresentations in its advertising. For the reasons articulated above, this argument necessarily fails. Furthermore, because the statements at issue were made in the course of advertising Defendant's product through product labeling in a significant number of grocery stores in Colorado, Plaintiff's First Amended Complaint (doc. 14) at 12, I presume that these statements have had significant public impact. *See Hall*, 969 P.2d at 235.

## Breach of Warranty

Plaintiff also asserts that Defendant has breached both implied and express warranties created in the marketing of its product. I consider each of these claims independently.

### *Express Warranty*

Plaintiff asserts that Defendant breached two express warranties on the packaging and labeling of its product: "1) that the Product is the only infant formula product that contains DHA and ARA and 2) that the Product 'is the only infant formula shown in independent clinical studies to

improve baby's brain and eye development.'"[10]  First Amended Complaint (doc. 14) at 18.  In order

to prevail on this claim, Plaintiff must first establish that Defendant created an express warranty.

Generally, an express warranty is formed when a seller makes a promise or a statement of fact,

beyond a mere opinion, that becomes the basis for the sale.  Colo. Rev. Stat. § 4-2-313.  Once a

statement becomes an express warranty, a seller's goods must conform to the affirmation or

promises contained on the product's label. Colo. Rev. Stat.  § 4-2-313(1)(a).  Once Plaintiff has

proven the existence of an express warranty, she must then show that the product does not conform

to the terms of that warranty.

As a threshold matter, Plaintiff fails to plead adequately that Defendant warranted that its

product is the only infant formula that contains DHA and ARA.  In fact, there is no such claim on

the product's label.  Because Defendant has not created an express warranty, there can be no breach

and this claim fails.

Plaintiff also claims that Defendant made and breached an express warranty when Defendant

stated on its product's label that it "is the only infant formula shown in independent clinical studies

to improve baby's brain and eye development."  Plaintiff's Exhibit A (doc. 14-1).  Here, *Palmer v.*

*A.H. Robins Co., Inc.* provides guidance as to whether this statement could constitute an affirmation

or promise to Plaintiff.  In that case, Palmer's doctor indicated to her that "the shield" was a superior

IUD compared to other IUDs, safer than the birth control pill, and 98.9% effective in preventing

pregnancy.  684 P.2d 187, 208 (Colo. 1984).  The doctor based this information on literature

---

[10] Plaintiff additionally plead that a third statement by Defendant on the Product's label created an express warranty: "[t]his scientifically-developed formula is not available in a store brand.'"  However, Plaintiff failed to plead that Defendant breached that warranty.  Thus, the statement cannot go forward.

provided by the manufacturer of the shield. *Id.* The Colorado Supreme Court found these statements to be affirmations of fact upon which Palmer relied. *Id.*

Like the statement at issue in *Palmer*, the statement that Defendant's product "is the only infant formula shown in independent clinical studies to improve baby's brain and eye development," is an affirmation of fact. Whether this statement conformed to the product, and if so, whether the statement affected Plaintiff's decision to purchase the product are questions for the jury. *See id.* Accordingly, Plaintiff has stated a plausible claim for relief and her breach of express warranty claim survives the Motion to Dismiss.

### *Implied Warranty*

Plaintiff also claims that Defendant breached its implied warranty of merchantability when, as above, it stated on its product "1) that the Product is the only infant formula product that contains DHA and ARA and 2) that the Product 'is the only infant formula shown in independent clinical studies to improve baby's brain and eye development.'"[11]   When Defendant sells its product, it provides an implied warranty of merchantability and it may be liable for a breach of the terms of that warranty. Colo. Rev. Stat. § 4-2-314. Thus, in order for Plaintiff to recover from Defendant on this claim, Plaintiff must prove that Defendant's product was not merchantable at the time of sale. *Id.*

To be merchantable, Defendant's product must: 1) "pass without objection in the trade under the contract description," 2) be "fit for the ordinary purpose for which such good is to be used," and 3) "conform to the promises or affirmations of fact made on the container or label." Colo. Rev. Stats.

---

[11] Plaintiff additionally plead that a third statement by Defendant on the Product's label created an implied warranty: "[t]his scientifically-developed formula is not available in a store brand.'"   However, Plaintiff failed to plead that Defendant breached that warranty. Thus, the statement cannot form the basis of Plaintiff's breach of implied warranty claim.

§ 4-2-314(2)(a), (c), (f).  *See also Colo.-Ute Electric Assoc., Inc. v. Envirotech Corp.*, 524 F. Supp. 1152, 1157 (D.Colo. 1981) (citing Colo. Rev. Stat. § 4-2-314).  The ordinary purpose of baby formula is to provide a baby with a healthy substitute for breast milk.  Because Defendant's product performs for its ordinary purpose, Defendant argues that Plaintiff's implied warranty claim should be dismissed.  While I agree that Defendant's product is likely fit for its ordinary purpose, I think that the question of implied warranty in this case more accurately turns on whether the promises or affirmations on the product's label conform with the product itself.

As in the breach of express warranty claim above, Plaintiff's First Amended Complaint cannot go forward on a breach of implied warranty claim on the first statement.  Contrary to Plaintiff's argument, the label does not state "that the Product is the only infant formula product that contains DHA and ARA." Plaintiff could not have purchased Defendant's based on that description.  The second statement, that Defendant's product "is the only infant formula shown in independent clinical studies to improve baby's brain and eye development," was however portrayed as an affirmation of fact on the label.  Whether this statement accurately conformed to the product is a question for the jury.  Thus, the second statement passes the motion to dismiss.

### Unjust Enrichment

Defendant next argues that Plaintiff has failed to state an actionable claim for unjust enrichment.  In order to state a claim for unjust enrichment, Plaintiff must allege that "(1) at [P]laintiff's expense (2) [D]efendant received a benefit (3) under circumstances that would make it unjust for [D]efendant to retain the benefit without paying." *Salzman v. Bachrach*, 996 P.2d 1263, 1265 (Colo. 2000).  Defendant does not contest that Plaintiff has adequately alleged the first two elements; Defendant focuses instead on whether its retention of the benefit it received from

Plaintiff's purchase of its product would be unjust.

Specifically, Defendant alleges that it may properly retain the benefit conferred by Plaintiff "because she obtained the benefit of the bargain in her purchase of a premium infant formula." Defendant's Motion to Dismiss (doc. 16) at 18.  Plaintiff flatly rejects this argument, citing her Amended Complaint which states:

> Mead Johnson did not provide Plaintiff or other members of the Class what they bargained for, a product that was:  1) the only infant formula product that contains DHA and ARA, 2) the only infant formula shown in independent clinical studies to improve baby's brain and eye development, and 3) an infant formula that is not available in a store brand.

Plaintiff's Amended Complaint (doc. 22) at 19.  The nature of the bargain struck by the parties is, in large part, dependent upon a reasonable understanding of Defendant's statements, which, in turn, is properly determined by the fact-finder.  Plaintiff has adequately pled facts which could lead a fact-finder to conclude that she did not receive the benefit for which she thought she was bargaining. Defendant's argument to the contrary is unavailing.

Defendant also argues that Plaintiff fails to allege facts suggesting that the product she purchased was worth less than what she paid or that Defendant artificially inflated the price of the product.  Plaintiff denies this contention, citing her Amended Complaint which contains an allegation that "she was misled into purchasing the Product and paying substantially more than she would have paid for what were comparable products available from other companies, thereby resulting in her suffering in fact and a loss of money or property resulting from Mead Johnson's conduct."  Plaintiff's Amended Complaint (doc. 22) at 20.  Construing this allegation in the light most favorable to Plaintiff, Defendant's argument necessarily fails.  Plaintiff has adequately pled a claim for unjust enrichment.

17

Although Plaintiff has adequately pled the elements of her unjust enrichment claim, it must be dismissed because the CCPA provides an adequate legal remedy. *See Harris Grp. v. Robinson*, 209 P.3d 1188, 1205-06 (Colo. App. 2009) (finding that, as an equitable remedy, unjust enrichment is not available where there is "a plain, speedy, and adequate remedy at law"). In her unjust enrichment claim, Plaintiff seeks recovery for the same wrongful conduct as in her CCPA claims. Most importantly, Plaintiff seeks the exact same damages for these two claims. *C.f., id.* at 1205 (noting that an unjust enrichment claim may be appropriate where the objective of available legal remedies is different). Furthermore, because the success of Plaintiff's unjust enrichment claim depends directly upon the success of her CCPA claims, alternative pleading is superfluous.

## Declaratory and Injunctive Relief

### *Declaratory Relief*

In her First Amended Complaint, Plaintiff seeks a declaratory judgment that Defendant committed violations of the CCPA, breached express and implied warranties, and unjustly enriched itself. I am permitted to grant such relief "[i]n a case of actual controversy within [my] jurisdiction . . . ." 28 U.S.C. § 2201(a); this requirement mirrors the "cases and controversies" requirement of Article III. *Aetna Life Ins. Co. v. Haworth*, 300 U.S. 227, 240 (1937). In determining whether a request for declaratory relief meets the case-or-controversy requirement, "the question . . . is whether the facts alleged, under all circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Md. Cas. Co. v. Pac. Coal & Oil Co.*, 312 U.S. 270, 273 (1941).

Defendant argues that Plaintiff's claim for declaratory relief fails because she "fails to allege the existence of an actual controversy relating to the legal rights and duties of the parties to entitle

18

her to declaratory relief." Defendant's Motion to Dismiss (doc. 16) at 19.  Because I have found that Plaintiff has adequately pled claims for relief under the CCPA and breach of warranty, Defendant's argument fails.  At this stage of the proceedings, there exists an actual controversy which could warrant the issuance of declaratory judgment.

### *Injunctive Relief*

Plaintiff also seeks an injunction prohibiting Defendant from engaging in its allegedly illegal conduct in the future.  Defendant argues that this request must be dismissed because it "lacks the specificity required under Federal Rule of Civil Procedure 65."  Defendant's Motion to Dismiss (doc. 16) at 19.  As Plaintiff properly notes, Fed. R. Civ. P. 65 is inapplicable because it pertains to injunction orders, not requests for injunctive relief made in complaints.  At the pleading stage, a request for injunctive relief "need only be specific enough to satisfy . . . notice pleading standards . . . ." *Shook v. Bd. of Cnty. Comm'rs*, 543 F.3d 597, 605 n. 4 (10th Cir. 2008).  Plaintiff's claim for injunctive relief meets this low standard.  Furthermore, Plaintiff's requested injunctive relief would likely be satisfied were I to grant its requested declaratory relief.  Because it is not yet possible to determine whether Plaintiff will require additional injunctive relief, it is premature to determine whether Plaintiff needs to meet any heightened standards at this point.

### CONCLUSION

For the reasons stated above, Defendant's Motion to Dismiss (doc. 15) is GRANTED as to Plaintiff's claim of Unjust Enrichment and DENIED as to Plaintiff's CCPA, Breach of Warranty, and Declaratory/Injunctive Relief claims.[12]

---

[12]  Although I deny Defendant's motion as to Plaintiff's CCPA and Breach of Warranty claims, going forward Plaintiff should focus its arguments only on those allegations and statements which provided sufficient basis for these claims.

Dated:  December 17, 2010                              BY THE COURT:

                                                       **/s/John L. Kane**
                                                       SENIOR U.S. DISTRICT JUDGE